UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

INNOVATIVE VEHICLE
SOLUTIONS WEST, LLC d/b/a
EL KAPITAN,

    Plaintiff,

v.

RENNTECH, INC.,

    Defendant.

Case No.:

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

Plaintiff INNOVATIVE VEHICLE SOLUTIONS WEST, LLC, d/b/a EL KAPITAN, by and through its undersigned counsel, sues Defendant RENNTECH, INC., and states:

**PARTIES, JURISDICTION, AND VENUE**

1. This is a civil action for breach of contract where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and is between citizens of different States.

2. Plaintiff INNOVATIVE VEHICLE SOLUTIONS WEST, LLC, d/b/a EL KAPITAN ("EL KAP") is a Delaware limited liability company with its principal place of business in California.

3. EL KAP is a corporate sibling of non-party Innovative Vehicle Solutions,

LLC, which is a Delaware limited liability company with its principal place of business in South Carolina.

4. Defendant RENNTECH, INC. ("RENNTECH") is a Florida corporation. Its principal place of business is in Stuart, Martin County, Florida, where it also maintains its registered agent.

5. This Court can exercise personal jurisdiction over Defendant because Defendant is domiciled in Martin County, Florida.

6. Venue is proper in the Southern District of Florida, Fort Pierce Division.

7. All conditions precedent to the institution of this lawsuit have occurred or been waived.

## FACTUAL BACKGROUND

8. In or about May 2017, non-party Ford Motor Company ("Ford") awarded a contract to EL KAP (the "Ford Agreement") under which EL KAP would retrofit a Ford 2017 Transit 350 HD van into a custom van (the "Custom-Built Van") for Ford's promotion of its van line. A copy of the Ford Agreement is attached as **Exhibit 1**.

9. Pursuant to the Ford Agreement, the Custom-Built Van was to debut at the 2017 Specialty Equipment Market Association ("SEMA") show at the Las Vegas Convention Center in November 2017, six months from the execution of the Ford Agreement.

10. The SEMA show is a premier trade-only event that enables specialty equipment manufacturers, such as EL KAP and its corporate sibling Innovative Vehicle Solutions, LLC, to display alongside automotive manufacturers, debut new and inventive products, and connect with industry buyers from around the world.

11. The Ford Agreement required EL KAP to make the Custom-Built Van available for advertising and company promotional materials, editorial or other exposure in trade publications, and product development. See **Exhibit 1**.

12. After its debut at the SEMA show, Ford intended to take the Custom-Built Van on a show circuit for the purpose of selling a custom van conversion to its dealerships across the country, after which time EL KAP would be entitled to sell the Custom-Built Van for profit.

13. EL KAP cooperated with its corporate sibling, non-party Innovative Vehicle Solutions, LLC, to fulfill EL KAP's obligations under the Ford Agreement within the six-month timeframe required under the contract. In particular, Innovative Vehicle Solutions, LLC provided financial support and supervised the project.

14. Innovative Vehicle Solutions, LLC sought RENNTECH's assistance to complete the necessary modifications to the Custom-Built Van before the SEMA show.

15. The agreement between Innovative Vehicle Solutions, LLC and

RENNTECH is evidenced by (i) a Letter of Intent dated April 13, 2017, a true and correct copy of which is attached as **Exhibit 2**; (ii) email correspondence between the parties throughout the summer and fall of 2017, including but not limited to the June 30, 2017 email correspondence attached as **Exhibit 3**; and (iii) a document entitled "SEMA Ford Transit Van Project Completion Plan" dated October 4, 2017, a true and correct copy of which is attached as **Exhibit 4**.

16. RENNTECH agreed to complete the following scope of work:

    a. Wheel adaptors installed;

    b. Wheels mounted;

    c. Air suspension left in working condition;

    d. Attempt to reduce noise level of air compressor;

    e. Functional lift system without oil leaks;

    f. Loading arm installed (with coating to be completed and paid for by EL KAP)

    g. Left front fender flare trimmed, fitted, and installed (with part ordered and purchased by EL KAP)

    h. Supply, unpack, and install grill;

    i. Reinforce side gullwing doors and align potential misalignments of doors;

    j. Assist with alignment of rear and side door struts (with struts to be

    ordered and purchased by EL KAP); and

  k. Visor completed and painted.

See **Exhibit 4**.

17. RENNTECH agreed to complete its scope of work (with the exception of the visor) by October 13, 2017. See **Exhibit 4**.

18. At all relevant times, RENNTECH knew that its work on the Custom-Built Van was in furtherance of the Ford Agreement. See **Exhibit 3**.

19. At all relevant times, RENNTECH knew that Ford intended to take the Custom-Built Van on a tour of Ford dealerships around the country and that, after said tour, EL KAP was to sell the Custom-Built Van for profit.

20. EL KAP was a third-party beneficiary of the agreement between Innovative Vehicle Solutions, Inc. and RENNTECH. Innovative Vehicle Solutions, Inc. and RENNTECH manifestly intended that the contract primarily and directly benefit EL KAP. This intent is evidenced by, *inter alia*, the fact that RENNTECH regularly communicated directly with EL KAP about specifications for the Custom-Built Van.

21. The agreement between Innovative Vehicle Solutions, LLC and RENNTECH required Innovative Vehicle Solutions, LLC to pay RENNTECH the fixed-price sum of $110,000.00. See **Exhibit 4**.

22. Innovative Vehicle Solutions, LLC and its agent Walther Boc collectively did

pay RENNTECH the sum of $110,000.00.

23. RENNTECH failed to complete its scope of work by October 13, 2017.

24. The work that RENNTECH did perform by October 13, 2017, was not completed in a workmanlike manner.

25. After RENNTECH's work, the gullwing doors on the Custom-Built Van were not latchable and could not lock. The gullwing doors were also too heavy and, when lifted open, bent in half from their own weight. Unsightly clamps were required to hold the gullwing doors open and prevent them from falling and becoming a hazard during the SEMA show.

26. RENNTECH's work also caused multiple problems with the Custom-Built Van's electrical system.

27. RENNTECH failed to paint the Custom-Built Van.

28. RENNTECH removed an air conditioner from the Custom-Built Van and failed to replace it.

29. A few weeks before the SEMA show, Ford checked on the progress of the Custom-Built Van and realized that it was unlikely to be completed on time. Had RENNTECH performed its work in a timely fashion, the Custom-Build Van would have received a prominent place inside the convention center, enabling EL KAP and Innovative Vehicle Solutions, Inc. to connect with industry buyers from around the world to promote their services. Instead, when Ford realized that the

Custom-Built Van was behind schedule, it was assigned to a less desirable outdoor location.

30. EL KAP and Innovative Vehicle Solutions, Inc. gave their best efforts to mitigate their damages and complete RENNTECH's scope of work themselves. EL KAP and Innovative Vehicle Solutions devoted valuable floor space and labor to the completion of RENNTECH's scope of work, precluding other jobs, which resulted in loss of productivity and income.

31. Despite Plaintiff's best efforts, the Custom-Built Van arrived 12 hours late to the 2017 SEMA show. It was placed unceremoniously in the hot sun alongside the Ford track, where there was far less foot traffic compared to the convention center.

32. After the SEMA show, Ford requested that the Custom-Built Van be brought to the desert for promotional filming. During the drive to the filming location, *the steering column separated from the rack and pinion while being driven*, revealing the Custom-Built Van to be unroadworthy and extremely dangerous.

33. EL KAP and Innovative Vehicle Solutions, Inc. subsequently discovered that RENNTECH had welded accessories to the Custom-Built Van's boron steel frame.

34. Ford manufactures vans with boron steel frames, which have a high strength-to-weight ratio. However, when boron steel is exposed to localized high heat, it becomes prone to fracturing. Welding to the boron steel frame is therefore

prohibited by Ford's Body and Equipment Mounting Manual, relevant excerpts of which are attached as **Exhibit 5**. Boron steel which has been compromised by heat exposure can fracture not only in high-impact or high-stress situations, but also under normal loads.

35. RENNTECH welded accessories to the Custom-Built Van's boron steel frame in clear violation of Ford's specifications and accepted industry standards.

36. As a direct result of RENNTECH welding accessories to the boron steel frame, the Custom-Built Van lost its structural integrity and was damaged beyond repair.

37. Had RENNTECH properly fulfilled its contractual obligations under its agreement with Innovative Vehicle Solutions, LLC, the Custom-Built Van would have had a value of approximately $244,000.00.

38. Due to RENNTECH's breaches, the Custom-Built Van now has only salvage value, estimated at $25,000.00.

39. Innovative Vehicle Solutions, LLC has assigned its causes of action against RENNTECH to EL KAP. A true and correct copy of the Assignment of Claims is attached as **Exhibit 6**.

## COUNT I: BREACH OF CONTRACT

40. EL KAP reaffirms and realleges paragraphs 1 through 39 as if fully set forth herein.

41. RENNTECH was contractually obligated to perform its work on the Custom-Built Van in a timely and workmanlike manner.

42. RENNTECH's work on the Custom-Built Van was both untimely and unworkmanlike.

43. RENNTECH's contractual breaches were material and caused damage.

**WHEREFORE**, EL KAP respectfully requests that the Court enter a judgment in its favor and against RENNTECH for damages, including pre- and post-judgment interest and costs, and for such other and further relief as the Court deems just and proper.

## COUNT II: UNJUST ENRICHMENT

44. EL KAP reaffirms and realleges paragraphs 1 through 39 as if fully set forth herein.

45. This Count II is brought in the alternative and is not applicable if RENNTECH admits the existence of its contractual obligations.

46. RENNTECH received the benefit of a $110,000.00 payment from Innovative Vehicle Solutions, LLC.

47. RENNTECH had knowledge of the benefit.

48. RENNTECH accepted the benefit.

49. The circumstances are such that it would be inequitable for RENNTECH to retain the benefit.

*WHEREFORE*, EL KAP respectfully requests that the Court enter a judgment in its favor and against RENNTECH for damages, including pre- and post-judgment interest and costs, and for such other and further relief as the Court deems just and proper.

### COUNT III: NEGLIGENCE

50. EL KAP reaffirms and realleges paragraphs 1 through 39 as if fully set forth herein.

51. RENTECH owed EL KAP a duty to treat the Custom-Built Van with due care.

52. RENNTECH breached its duty of due care and caused damage not only to RENNTECH's own work on the Custom-Built Van, but also to elements outside of its contractual scope of work such as the steering column and the boron steel frame.

53. In particular, RENNTECH was negligent in exposing the boron steel frame to high heat.

54. EL KAP has been damaged by RENNTECH's negligence.

*WHEREFORE*, EL KAP respectfully requests that the Court enter a judgment in its favor and against RENNTECH for damages, including pre- and post-judgment interest and costs, and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated this 5th day of October, 2021.

**LINDSAY & ALLEN, PLLC**

/s/ *Todd B. Allen*
Todd B. Allen, Esq.
Florida Bar No. 83990
Victor Bermudez, Esq.
Florida Bar No. 1010344
*Trial Counsel for Plaintiff*
13180 Livingston Road, Suite 206
Naples, FL 34109
(P) 239.593.7900 (F) 239.593.7909
todd@naples.law
victor@naples.law
kelsey@naples.law
victoria@naples.law