UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-14404-CV-CANNON/MAYNARD

INNOVATIVE VEHICLE SOLUTIONS
WEST, LLC, d/b/a El Kapitan,

      Plaintiff,

v.

RENNTECH, INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me upon Defendant's Amended Motion to Dismiss Plaintiff's Amended Complaint ("Motion"), DE 16, to which Plaintiff has responded in opposition, DE 22, and Defendant has replied, DE 26. Presiding U.S. District Judge Aileen M. Cannon has referred the Motion to me for a report and recommendation. DE 27. Upon review of the parties' briefing and the record in this case, I respectfully recommend that the Motion be **GRANTED IN PART AND DENIED IN PART** as follows.

## MOTION TO DISMISS STANDARD

Defendant brings its Motion under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; it is not to decide the merits of a case. *Milburn v. U.S.*, 734 F.2d 762, 765 (11th Cir. 1984). Rule 12(b)(6) permits dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While

a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a complaint must provide the "grounds" for a plaintiff's entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In analyzing a Rule 12(b)(6) motion, I am to assume as true all of plaintiff's well-pled allegations and construe them in the light most favorable to plaintiff. *See American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). If the complaint's allegations are more conclusory than factual, however, I need not assume their truth. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). If a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine if the well-pled allegations "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint can only survive Rule 12(b)(6) dismissal if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556.

While a complaint's factual allegations must be accepted as true in analyzing a motion to dismiss, when a plaintiff attaches documents or exhibits which contradict the factual allegations in the complaint, the exhibits govern. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); Fed. R. Civ. P. 10(c) (providing that a written instrument that is an exhibit to a pleading is part of the pleading for all purposes); *see also Jordan v. Miami-Dade Cty.*, 439 F. Supp. 2d 1237, 1240 (S.D. Fla. 2006) ("Exhibits attached to a Complaint are properly considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion.").

## BACKGROUND

This case stems from a series of agreements related to the customization of a Ford van for display at a Las Vegas trade show and other promotional purposes. Plaintiff Innovative Vehicle Solutions West, LLC d/b/a El Kapitan ("Plaintiff" or "IVS West") is a Delaware limited liability company with its principal place of business in California. DE 5, Amended Compl. ¶ 3. Plaintiff's sole member is non-party IVS International, Inc., which is a Delaware corporation with a principal place of business in South Carolina. *Id.* Defendant Renntech, Inc. is a Florida corporation with a principal place of business in Stuart, Martin County, Florida. *Id.* ¶ 5. The below facts are drawn from the Amended Complaint and its attached documents that are central to Plaintiff's claims. I will draw all reasonable inferences in Plaintiff's favor.

On May 30, 2017, non-party Ford Motor Company ("Ford") awarded a contract to Plaintiff (the "Ford Agreement") under which Plaintiff would customize a Ford 2017 Transit 350 HD for Ford's promotion of its van line at an automotive trade show in Las Vegas in November 2017. *Id.* ¶¶ 9-11; DE 5-1. The Ford Agreement required Plaintiff to make the customized van available for advertising and company promotional materials, editorial or other exposure in trade publications, and product development. DE 5 ¶ 12; DE 5-1. After the customized van's debut at the Las Vegas show, Ford intended to take the van on a nationwide tour of Ford dealerships to promote custom van conversion, after which time Plaintiff would be entitled to sell the van for profit. DE 5 ¶ 13.

Plaintiff "cooperated with its corporate sibling" and non-party Innovative Vehicle Solutions, LLC ("IVS") to fulfill Plaintiff's obligations under the Ford Agreement. *Id.* ¶ 14. Specifically, IVS provided IVS West with financial support and project supervision. *Id.* Non-party IVS separately contracted with Defendant to complete the necessary modifications to the van for a fixed price of $110,000.00, as evidenced by (i) a two-page Letter of Intent dated April 13,

2017 and signed by Defendant's President, DE 5-2, (ii) email correspondence throughout the summer and fall of 2017, including but not limited to an email chain from June 30, 2017 that is attached to the Amended Complaint, DE 5-3; and (iii) a one-page document entitled SEMA Ford Transit Van Project Completion Plan dated October 4, 2017 and signed by representatives of Defendant and IVS.  DE 5-4.  DE 5 ¶¶ 15-16, 22-23.

Under the completion plan between Defendant and IVS, Defendant agreed to complete the following work:  (1) install wheels adaptors; (2) mount wheels; (3) leave air suspension in working condition; (4) attempt to reduce noise level of air compressor; (5) functional lift system without oil leaks; (6) install loading arm (with coating to be completed and paid for by Plaintiff); (7) trim, fit, and install left front fender flare (with part ordered and purchased by Plaintiff); (8) supply, unpack, and install grill; (9) reinforce side gullwing doors and align potential misalignments of doors; (10) assist with alignment of rear and side door struts (with struts to be ordered and purchased by Plaintiff); and (11) complete and paint visor.  DE 5 ¶ 17; DE 5-4.  Defendant agreed to complete this work (except the work on the visor) by the "anticipated" date of October 13, 2017. DE 5-4.  Plaintiff contends that Defendant always knew that Defendant's work on the van was in furtherance of the Ford Agreement and Ford's intention to take the van on a nationwide tour of Ford dealerships, after which Plaintiff would sell the van for profit.  DE 5 ¶¶ 18-20.

Plaintiff claims to be a third-party beneficiary of the contract between non-party IVS and Defendant based upon Defendant's regular communications with Plaintiff about specifications for the customized van.  *Id.* ¶ 21.  Defendant failed to complete its work by the deadline of October 13, 2017, and Defendant's work on the van was deficient, including a missing air conditioner, failure to paint the van, electrical system problems, and non-functioning gullwing doors.  *Id.* ¶¶ 24-29.  When Ford realized the van customization project was behind schedule, Ford assigned the

van to be placed in a less desirable outdoor location instead of placing it in a prominent place inside the Las Vegas show's venue space. *Id.* ¶ 30. At the expense of other jobs and income, Plaintiff and IVS tried to mitigate damages by completing Defendant's scope of work on the van themselves. *Id.* ¶ 31. Despite these efforts, the customized van arrived 12 hours late to the Las Vegas show and was "placed unceremoniously in the hot sun alongside the Ford track, where there was far less foot traffic compared to the convention center." *Id.* ¶ 32.

After the Las Vegas show, Ford asked that the van be driven to the desert for promotional filming, however on the drive over, the van's steering column separated from the rack and pinion revealing the van to be unroadworthy and dangerous. *Id.* ¶ 33. Plaintiff later learned that Defendant had welded accessories to the van's boron steel frame, which is prohibited by a Ford manual attached to the Amended Complaint and is a clear violation of Ford's specifications and accepted industry standards. *Id.* ¶¶ 34-36. This action of welding accessories to the steel frame caused the van to lose its structural integrity and become damaged beyond repair. *Id.* ¶ 37. According to Plaintiff, if Defendant had properly fulfilled its contractual obligations under its agreement with IVS, the van would have been valued at approximately $244,000.00. *Id.* ¶ 38. Due to Defendant's breaches, the van now has only salvage value of approximately $25,000.00. *Id.* ¶ 39. IVS has assigned its causes of action against Defendant to Plaintiff, as evidenced by an executed Assignment of Claims dated October 1, 2021. *Id.* ¶ 40; DE 5-6.

Based on the above factual allegations, Plaintiff is suing Defendant for (1) breach of contract, (2) unjust enrichment, and (3) negligence.

**DISCUSSION**

Defendant argues that all three counts should be dismissed because (1) Counts I and II for breach of contract and unjust enrichment fail to state a cause of action, and (2) Count III for

negligence is insufficiently pled and barred by Florida's economic loss rule. I will address each count in turn.

## I. Count I – Breach of Contract

Count I for breach of contract alleges that Defendant breached its contractual obligations to perform work on the van in a timely and workmanlike manner resulting in damages. DE 5 ¶¶ 42-44. Defendant argues that this claim fails because (1) as non-party to the contract between IVS and Defendant, Plaintiff has no right to sue Defendant; (2) even under the Assignment of Claims, Plaintiff cannot show that IVS suffered any damages or had a cause of action for breach of contract to assign to Plaintiff; (3) Plaintiff is not a third-party beneficiary; (4) Plaintiff alleges breaches of requirements that do not appear in the contract such as a time for performance and painting the van; and (5) Plaintiff improperly commingles claims as a party, third-party beneficiary, and assignee in violation of Federal Rule of Civil Procedure 10(b). Plaintiff acknowledges that it is not a party to the contract between IVS and Defendant but asserts that it may bring its breach of contract claim as "assignee of the contracting party's cause of action for breach" and also as a "third-party beneficiary." DE 22 at 3.

As Plaintiff concedes, Plaintiff and Defendant are not in direct contractual privity because the completion plan contract is between non-party IVS and Defendant, not Plaintiff and Defendant. DE 5-4. However, I find that Plaintiff has sufficiently alleged its rights as a valid assignee or, alternatively, as a third-party beneficiary of this contract.

An assignment under Florida law is "like any other contract." *Hartford Ins. Co. of The Midwest v. O'Connor*, 855 So. 2d 189, 191 (Fla. 5th DCA 2003). "All contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates against assignment." *Kohl v. Blue Cross & Blue Shield of Fla.,*

*Inc.*, 988 So. 2d 654, 658 (Fla. 4th DCA 2008); *see also* Fla. Stat. § 672.210. The intent of the parties determines the existence of an assignment and courts look to the plain language of the parties' agreement to determine the scope of the assignment. *Boulevard Nat'l Bank of Miami v. Air Metal Indus., Inc.*, 176 So. 2d 94, 97 (Fla. 1965); *Giles v. Sun Bank, N.A.*, 450 So. 2d 258, 260 (Fla. 5th DCA 1984). Once a valid assignment occurs, the assignee stands in the shoes of the assignor and may enforce the contract. *See, e.g., Dove v. McCormick*, 698 So. 2d 585, 589 (Fla. 5th DCA 1997); *State Farm Fire & Cas. Co. v. Ray*, 556 So. 2d 811, 813 (Fla. 5th DCA 1990).

Here, the Amended Complaint attaches an Assignment of Claims dated October 1, 2021, in which IVS assigns to Plaintiff IVS West "all causes of action with respect to the Agreement and/or the Subject Matter that Assignor has against [Defendant]." DE 5-6. The assignment defines the contractual "Agreement" as being the completion plan between IVS and Defendant and the related letter of intent between these parties. *Id.* It further defines the agreement's "Subject Matter" as being "the modification of a 2017 Ford Transit 350 HD van, VIN#1FTRS4XV5HKA86139, for display at the 2017 SEMA show in Las Vegas and other promotional efforts." *Id.* The underlying completion plan neither prohibits assignments nor involves personal obligations. There also is no public policy reason that would prohibit the assignment.

Nonetheless, Defendant challenges the assignment's validity on grounds that it occurred after prior state court litigation between Defendant and IVS and well after the van customization project. Neither argument holds water. Defendant's reference to prior state court litigation is improper at this stage because in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint" and any documents attached to the complaint which are incorporated by reference and central to plaintiff's claims. *St. George v. Pinellas Cnty.*, 285

F.3d 1334, 1337 (11th Cir. 2002); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Moreover, Defendant cites no authority, nor am I aware of any, for its argument that the timing of the assignment renders it invalid.

Defendant also argues that IVS had no valid breach of contract claim to assign because the contract did not require Defendant to either complete the work by October 13, 2017 or paint the van as alleged. Defendant argues further that IVS "did not suffer the damages alleged in the Amended Complaint" because all alleged damages "arise from injuries sustained to the Van itself and diminution in the value of the Van" which IVS never owned. DE 16 at 9. I am not persuaded. The Amended Complaint alleges that the completion plan between Defendant and IVS obligated Defendant to timely complete specified work on the van in exchange for a payment of $110,000.00. The Amended Complaint further alleges that Defendant knew its work was in furtherance of the Ford Agreement and that Defendant breached the completion plan by not timely completing the specified work and causing electrical system problems and hazardous-inducing modifications to the van. The alleged untimely and shoddy work led IVS to suffer damages in the form of damage to the van, as well as lost productivity and income. In all, the allegations sufficiently form the basis for a breach of contract claim belonging to IVS that is now assigned to IVS West.

Alternatively, I find that the allegations are sufficient to confer third-party beneficiary status upon Plaintiff. "A third party is an intended beneficiary, and thus able to sue on a contract, only if the parties to the contract intended to primarily and directly benefit the third party." *Florida Power & Light Co. v. Road Ruck, Inc.*, 920 So.2d 201 (Fla. 4th DCA 2006); *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1283 (11th Cir. 2004); *Peters v. Keyes Co.*, 402 Fed. Appx. 448, 451 (11th Cir. 2010) (a non-party is a third-party beneficiary when the agreement was executed "for the primary and direct benefit" of that party) (quoting *Morgan Stanley DW, Inc. v.*

*Halliday*, 873 So. 2d 400, 403 (Fla. 4th DCA 2004)). It is not enough that a plaintiff receives an ancillary or incidental benefit from the contract. *Compare Greenacre Props. v. Rao*, 933 So. 2d 19 (Fla. 2d DCA 2006) (finding that a homeowner was not a third-party beneficiary of a contract between his homeowner's association and a property management company—even though the homeowner may have incidentally benefited from the company's recordkeeping efforts—because the contract created no express rights for a homeowner and the company performed the recordkeeping function primarily for the association) *with Cooper v. IBI Sec. Service, Inc.*, 281 So. 2d 524 (Fla. 3d DCA 1973) (finding that a life insurance collector was a third-party beneficiary to his employer's contract with a security company because the agreement was made for the purpose of protecting the plaintiff and other employees by furnishing an armed guard to accompany employees making collections on dangerous routes).

A court discerns the intention of the parties with respect to third party beneficiaries by construing the terms of the contract as a whole "in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005) (quoting *A.R. Moyer, Inc. v. Graham*, 285 So. 2d 397, 402 (Fla.1973)).

Here, a reading of the completion plan between Defendant and IVS shows that it was entered into between the contracting parties with the primary purpose of retaining Defendant to complete specified work on the van within a specified timeframe. While it is true that the contract does not contain an express third-party beneficiary clause, that is not the end of the inquiry as "Florida law looks to the 'nature or terms of a contract' to find the parties' clear or manifest intent that it 'be for the benefit of a third party.'" *FDIC v. Pearl*, 2013 WL 1405941, at *3, (M.D. Fla. Apr. 8, 2013) (quoting *Jenne v. Church & Tower, Inc.*, 814 So. 2d 522, 524 (Fla. 4th DCA 2002).

There are indications in the contract sufficient to demonstrate an intent of the two contracting parties to primarily and directly benefit Plaintiff. These indications include the contract's references to Plaintiff's business name of "El Kapitan," the statement that the work on the van was to be performed at El Kapitan's location, and the identification of an IVS representative who would be present at El Kapitan while work on the van was being performed and who "will act as the coordinator between [Defendant's] employees and El Kapitan." DE 5-4. Moreover, Plaintiff alleges that Defendant regularly communicated directly with Plaintiff about the necessary specifications for the customized van. DE 5 ¶ 21. By way of example, Plaintiff relies on attached email correspondence from June 30, 2017 with the subject line "El Kapitan RENNtech SEMA Project" between individuals with "elkapitan.com" email addresses and an individual involved in Defendant's marketing department. DE ¶ 16; DE 5-3. I find the Amended Complaint's allegations regarding the circumstances of the van customization and document submissions sufficient to demonstrate an intent to provide Plaintiff the benefit of the contract work to be performed on the van.

Lastly, I reject Defendant's cursory argument that Plaintiff violated Rule 10(b) by improperly commingling claims as a party, an alleged third-party beneficiary, and an assignee. In pertinent part, Rule 10(b) states: "If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count ..." Fed. R. Civ. P. 10(b). The Eleventh Circuit has explained that Rules 8 and 10 work together:

> to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996). Importantly, "'[s]eparation, under [Rule] 10(b), is discretionary and unnecessary if the claims arise from the same actions or underlying circumstances.'" *Arbitron Inc. v. Renda Broadcasting Corp.*, 2014 WL 1268587, *8 (M.D. Fla. Mar. 27, 2014) (quoting *Capital Factors, Inc. v. Heller Fin, Inc.*, 712 F. Supp. 908, 911 (S.D. Fla. 1989)).

Rule 10(b) requires separation only if the claims are "founded on a separate transaction or occurrence." Fed. R. Civ. P. 10(b) (emphasis added). Separation is unnecessary where, as here, the alleged claims arise from the same actions or underlying circumstances. The Amended Complaint asserts three distinct counts for breach of contract, unjust enrichment, and negligence. Each count is procedurally appropriate as each arises from the same van customization transaction. Contrary to Defendant's assertions, no separation of counts is necessary regarding Plaintiff's capacity to sue under each count. In fact, such a separation would run contrary to Rule 10's goal of promoting clarity in pleadings. Defendant cites no case law that would suggest a different result.

For the above reasons, I conclude that Plaintiff's properly pled breach of contract claim should be allowed to proceed.

## II.     Count II – Unjust Enrichment

Count II for unjust enrichment is expressly pled in the alternative and alleges that Defendant was unjustly enriched when it received the benefit of a $110,000.00 payment from non-party Innovative Vehicle Solutions, LLC. DE 5 ¶¶ 46-50. Defendant argues that Plaintiff fails to state a valid unjust enrichment claim because it is premised on a payment from IVS to Defendant which leaves Plaintiff without a cause of action. Defendant further argues that the applicable four-year statute of limitations bars Plaintiff's unjust enrichment claim.

To establish unjust enrichment in Florida, a plaintiff must prove that "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018). Although it is well established that an unjust enrichment claim cannot be maintained when there is an express contract with a legal remedy, *see, e.g., Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014), it is equally clear that a plaintiff may assert a claim for unjust enrichment as an alternative to a contract claim. *Silver Crown Invest., LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316 (S.D. Fla. 2018).

Here, Plaintiff alleges that Defendant has been unjustly enriched by retaining the full $110,000.00 payment made by IVS and IVS's agent for the unsatisfactory work performed on the van. Plaintiff alleges further that Defendant retained the full amount paid even though Defendant did not satisfactorily provide the services for which this payment was made. Defendant overlooks the assignment of claims from IVS to IVS West encompassing all causes of action concerning the van customization project, which allows Plaintiff to stand in IVS's shoes and pursue the well-pled claim for unjust enrichment.

Defendant separately argues that Plaintiff's unjust enrichment claim is time-barred by the applicable statute of limitations. I note at the outset that, in general, courts hesitate to bar a claim under the applicable statute of limitations at the motion-to-dismiss stage. *See Spadaro v. City of Miramar*, , 1328 (S.D. Fla. 2012) (Cohn, J.) ("Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss.") (*citing Cabral v. City of Miami Beach*, 76 So.3d 324, 326 (Fla. 3d DCA 2011)). A

"Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004)

Under Florida law, Plaintiff's unjust enrichment claim is subject to a four-year statute of limitations. *Swafford v. Schweitzer*, 906 So.2d 1194, 1195 (Fla. 4th DCA 2005) (statute of limitations for unjust enrichment claim is four years under Fla. Stat. § 95.11(3)(k)). This suit was filed on October 5, 2021 making October 5, 2017 the critical date for statute of limitations purposes. Under Florida law, the general rule is that "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." Fla. Stat. § 95.031. Under Florida law, an unjust enrichment claim accrues when the benefit is conferred. *See e.g.*, *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So.2d 571, 577 (Fla. 4th DCA 2006); *Swafford*, 906 So.2d at 1195–96.

While the parties agree on the four-year limitations period, they disagree about when this period began to run. The agreement between IVS and Defendant required Defendant to be paid the total sum of $110,000.00 over time with the first payment made on July 20, 2017, subsequent payments on October 5, 2017 and October 13, 2017, and the last payment due "upon completion of [Defendant's] remaining work listed below." DE 1-4. Defendant argues that the four-year window began on the first payment date of July 20, 2017, such that the case needed to be filed before July 20, 2021. DE 16 at 16-17. Plaintiff counters that the statute of limitations began to in mid-to-late October 2017 "when the circumstances became such that [Defendant's] retention of the benefit was inequitable." DE 22 at 11. Plaintiff contends that the delayed discovery rule should be applied here. *Id.* at 12.

The delayed discovery rule provides that an action will not begin running until "the time the facts giving rise to the cause of action were discovered or should have been discovered." Fla. Stat. § 95.031(2)(a). However, this provision applies only to actions "founded upon fraud under § 95.11(3), including constructive fraud." Plaintiff's unjust enrichment claim is not founded upon fraud and is instead governed by the four-year statute of limitations in Fla. Stat. § 95.11(3)(k). As a result, the claims are not afforded delayed discovery, but accrue "when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1); *see Davis v. Monahan*, 832 So.2d 708, 712 (Fla.2002) (rejecting application of delayed discovery doctrine to unjust enrichment action).

Since the delayed discovery exception does not apply, I must consider under the general rule when Plaintiff's unjust enrichment claim accrued. Under the general rule, "[a] cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). The question then, for statute of limitations purposes, is when did all elements of Plaintiff's cause of action for unjust enrichment occur? One Florida case suggests that a benefit is conferred when a defendant receives payment. *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So. 2d 571 (Fla. 4th DCA 2006). This case, however, involved only one single payment of attorney's fees to the defendant pursuant to a judgment, as opposed to a series of partial payments present here. There, the plaintiff law firm had an agreement to split a contingent fee with the defendant law firm. The state court found that the plaintiff's unjust enrichment claim would not have accrued until the defendant law firm was paid.

Under the alleged facts here, I find that Plaintiff's unjust enrichment should not be dismissed on statute-of-limitations grounds at this stage in the proceedings. I am unaware of authority that clearly renders the date of the first payment in a series of payments owed under an

agreement as being the date on which an unjust enrichment claim such as Plaintiff's begins to accrue for statute of limitations purposes. The payment schedule here was contained within an agreement that was dated October 4, 2017. The first payment date of July 20, 2017 was prior to the agreement's date. The agreement contemplated three additional payments to be made according to a schedule making the last payment due around the date of October 13, 2017, when the work on the van was "anticipated to be completed." Plaintiff filed its complaint on October 5, 2021. Under these circumstances and given the general reluctance to dismiss claims on statute of limitations grounds at the motion-to-dismiss stage, I decline to recommend that Plaintiff's unjust enrichment claim be dismissed on this ground. Defendant remains free to raise a statute of limitations affirmative defense in its answer.

I conclude that Plaintiff has pled sufficient facts to withstand dismissal of its unjust enrichment claim. Plaintiff has properly pled unjust enrichment as an alternative to its breach of contract claim.

**III.     Count III – Negligence**

Count III alleges that Defendant owed Plaintiff a duty to treat the van with due care and "was negligent in exposing the boron steel frame to high heat." DE 5 ¶¶ 53-54. Defendant argues that this claim is insufficiently pled as to the necessary elements of a negligence claim. Defendant argues also that this claim is barred by Florida's economic loss rule.

Florida's economic loss rule is a judicial doctrine under which a tort action may be barred if the only damages suffered are economic losses. *See Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 401 (Fla. 2013). In 2013, the Florida Supreme Court made clear that "application of the economic loss rule is limited to products liability cases." *Id.* at

407. Thus, I find that Florida's economic loss rule does not apply in this non-products liability case,

However, while the economic loss rule has been limited to product liability cases, "in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim." *Tiara Condo.*, 110 So. at 408 (Pariente, J., concurring); *see also Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) (Rosenbaum, J.) (finding that a party "must [still] allege action beyond and independent of breach of contract that amounts to an independent tort" (citations omitted)), *Peebles v. Puig*, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017) ("When, as here, a contract has been breached, a tort action lies only for acts independent of those acts establishing the contract's breach."). This proposition is known as Florida's independent tort doctrine, described as "an off-shoot of the economic loss rule" that applies when parties are in "contractual privity." *Spears v. SHK Consulting & Dev., Inc.*, 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018). Under this doctrine, one cannot assert a tort action premised upon the same issues addressed in a contract. *Id.*; *see also Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (observing "the law is still somewhat unsettled in this area," but citing Justice Pariente's concurrence and noting: "*Tiara* may, however, have left intact a separate hurdle, namely that 'a party still must demonstrate that. ..the tort is independent of any breach of contract claim,'" and further adding that "[w]hile the exact contours of this possible separate limitation, as applied post-*Tiara*, are still unclear, the standard appears to be that 'where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence.'"); *Sun Life Assurance Co. of Can. v. Imperial Holdings Inc.*, 2016 WL 10565034, at

*5 (S.D. Fla. Sept. 22, 2016) (Brannon, M.J.) (finding it "well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims").

I find that Florida's independent tort doctrine bars Plaintiff's negligence claim. Plaintiff attempts to differentiate its negligence claim from its breach of contract claim, arguing that Plaintiff has alleged damage to "other property" with reference to the claimed damage to the van's steering column and boron steel frame. DE 22 at 13-16. I am not persuaded. I find that Plaintiff's negligence claim is not independent of its breach of contract claim. Plaintiff's breach of contract claim alleges that Defendant "was contractually obligated to perform its work on the [van] in a timely and workmanlike manner," while Plaintiff's negligence claim alleges that Defendant "owed a duty to treat the [van] with due care." DE 5, ¶¶ 42, 53. Without the Ford Agreement and the subsequent contract with specifications to customize the van, the parties here would have no relationship at all. Plaintiff fails to allege a recognized duty owed by Defendant outside of these contractual agreements. *See Capten Trading Ltd. v. Banco Santander Int'l*, 2018 WL 1558272, at *5 (S.D. Fla. March 29, 2018) (Scola, J.) (dismissing negligence claims, among other reasons, because the plaintiff "failed to establish a recognized duty existing outside the parties' contractual relationship" and noting that "fundamental contract principles ... bar a tort claim where a defendant has not committed a breach of duty independent of his breach of contract") (citing *Tulepan v. Roberts*, 2015 WL 235441, at *6 (S.D. Fla. Jan. 16, 2015) (Middlebrooks, J.)). Moreover, the conduct that forms the basis of Plaintiff's breach of contract and negligence claims is the same. Thus, while Plaintiff may have alleged the formulaic elements of a negligence claim, it has not alleged a negligence claim that is independent from the acts establishing its breach of contract claim. Plaintiff's negligence claim is simply a recast version of its breach-of-contract claim. Consequently, the negligence claim should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, I respectfully recommend that Defendant's Motion [DE 16] be **GRANTED IN PART AND DENIED IN PART** as follows*:*

1. The Motion should be **DENIED** as to Count I for breach of contract and Count II unjust enrichment. These two counts should be permitted to proceed against Defendant.

2. The Motion should be **GRANTED** as to Count III for negligence. This third count should be **DISMISSED WITH PREJUDICE**.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 16th day of June, 2022.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE